```
       IN THE UNITED STATES DISTRICT COURT
    FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                  JACKSON DIVISION
```

**UNITED STATES OF AMERICA**

VS.                                   CRIMINAL NO. 3:05-CV-124BN

**JASON BONDS AND TWILLA
LASHON KING**

### OPINION AND ORDER

This cause is before the Court on the Motion to Suppress of Defendants Jason Bond and Twilla King, filed October 27, 2005. On November 18, 2005, the undersigned held a stenographically recorded evidentiary hearing on the subject Motion ("November 18 Hearing"). After hearing the evidence presented at the November 18 Hearing and having considered the Motion, Response, and supplemental briefs of the parties, as well as supporting and opposing authority, the Court finds that the Motion to Suppress is well taken and should be granted.

### I.  Factual Background and Procedural History

On June 8, 2004, agents from the Mississippi Bureau of Narcotics ("MBN") and the Mississippi Department of Corrections ("MDOC") conducted a search of the residence of Defendants Jason Bond and Twilla King and discovered various amounts of marijuana and cocaine. Defendants were subsequently indicted by a grand jury on counts of conspiracy and possession with intent to distribute.

Although a valid search warrant was obtained by the agents, Defendants contend that the search occurred prior to the time the warrant was issued; therefore, the evidence obtained during the search should be suppressed.[1]

On the morning of June 8, 2004, MBN agents Simone Sandifer and Billy Warner were informed by an inmate at the Pike County, Mississippi Jail that Defendant Bonds had been distributing illegal drugs from his residence at 221 North Magnolia Street in McComb, Mississippi.[2] After receiving this information, the two MBN agents contacted Bonds' MDOC probation officer, Robbie Roberts ("PO Roberts"). At some time after lunch on June 8, 2005, PO Roberts, accompanied by Agent Sandifer, Agent Warner, and various other law enforcement officers (collectively "the agents"), proceeded to the Bonds residence to conduct a probation home inspection.

The sequence and timing of events that transpired from this point on, particularly the exact time the search occurred, are largely in dispute. Agent Sandifer testified at the November 18 Hearing that the agents arrived at the residence at approximately

---

[1] The issue raised by Defendants in their written Motion centered on whether the search warrant was valid. At the November 18 Hearing, the Court ruled that the warrant was in fact valid. However, as an alternative ground for suppression, Defendants argue that the search was invalid because it occurred prior to the agents obtaining a search warrant.

[2] It was later discovered that this was also the residence of Twilla King. For the sake of clarity, the Court will hereinafter refer to the residence as the Bonds residence.

4:00 p.m. Her affidavit which was used to obtain the search warrant also stated that the officers arrived at 4:00 p.m. Upon arriving at the residence, the agents allegedly observed marijuana in plain view on the front porch of the home. Believing that sufficient probable cause evidence existed, Agent Sandifer left the residence at that point to obtain a search warrant, while the other agents remained at the residence. While waiting on Agent Sandifer to obtain the warrant, the other agents kicked down the door of the house and entered the house to conduct a protective sweep. Agents Warner and Roberts testified that the agents were walking in and out of the house at this time, but that they did not begin the search.

Agent Sandifer further testified that the magistrate signed the warrant authorizing the search of the residence somewhere between 4:45 and 5:00 p.m. After securing the warrant, Agent Sandifer allegedly called to inform the other agents that they could begin the search. Although they could not recall what time the search began or what time the drugs were discovered, Agent Walden and PO Roberts both testified that they did not begin a search of the residence until after Agent Sandifer called to inform them of the warrant.

Defendants, on the other hand, argue that the search took place before the warrant was issued. As proof of their claim, Defendants first point to Agent Sandifer's investigative report and

the apparent contradiction it creates with her testimony and affidavit. Although Agent Sandifer testified and stated in her affidavit that the agents arrived at Bonds' residence at 4:00 p.m., her investigation report reflects a 5:00 p.m. arrival time. Agent Warner and PO Roberts both testified that they could not recall what time they actually arrived at the residence.

To further contradict Agent Sandifer's recitation of events, Defendants rely on photographs taken by Agent Sandifer and PO Roberts during the search. At the November 18 Hearing, Agent Sandifer testified that the search began at approximately 5:00 p.m. and that the drugs were actually found in a wall at the residence approximately thirty minutes later at 5:30 p.m. However, the photographs taken by PO Roberts during the search, which were pictures of items other than the subject drugs, reflect that the photographs were taken between 3:49 p.m. and 3:57 p.m.[3] Exhibit "D4" to November 18 Hearing. Agent Sandifer also took photographs during the search with a different camera. Those photographs, which are pictures of the agents actually discovering the drugs in a wall of the residence, reflect a time range from 4:04 p.m. to 4:09 p.m. Exhibit "D1" to November 18 Hearing. Based on this evidence, Defendants reason that the search actually occurred well before the

---

[3] The date on the photographs taken by Roberts is June 7, 2004, but the search actually occurred on June 8, 2004.

time Agent Sandifer stated the warrant was signed, which was between 4:45 and 5:00 p.m.

In response to the photographs, the government argues that the times on the photographs are unreliable for two reasons. First, the cameras were not changed for daylight-saving time, which was in effect at the time; therefore, the times on the photographs would be one hour earlier than the actual time. Second, both Agent Sandifer and PO Roberts testified that they have never set the time on their cameras.

## II.  Burden of Proof

As an initial matter, the Court must decide who bears the ultimate burden of proof on this matter.

The phrase "burden of proof" is commonly used to refer to two distinct burdens – (1) the burden of production and (2) the burden of persuasion. W. Lafave, Search and Seizure § 11.2(b) (4th ed. 2004). The burden of production is simply the initial burden to present evidence. Id. The burden of persuasion, on the other hand, only becomes important after all the evidence has been presented. Id. If the trier of fact is in doubt after hearing all the evidence, then the issue must be resolved against the party with the burden of persuasion. Id.

Where a defendant moves to suppress evidence, the defendant always carries the "initial burden of producing evidence on specific factual allegations sufficient to make a prima facie

5

showing of illegality." United States v. De La Fuente, 548 F.2d 528, 534 (5th Cir. 1977). And as a general rule, the burden of persuasion also falls on the defendant to prove that evidence was illegally obtained. Id. at 533. However, there are certain "well defined" exceptions to the general rule where the burden of persuasion shifts to the government. Id. "For example, if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden [of persuasion] shifts to the government to justify the warrantless arrest or search." Id. (citations omitted).[4] Regardless of who has the burden of persuasion, the burden is always measured by a preponderance of the evidence standard. Id.

In the case *sub judice*, Defendants have clearly met their initial burden of production. The photographs taken by Agent Sandifer and PO Roberts that were produced by Defendants are alone

---

[4] Although inapplicable in this case, the De La Fuente court also cited two other situations where the government had the burden of persuasion.
> [Where]a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilage against self incrimination. . . . Similarly, if a defendant seeks to suppress evidence as the fruit of an illegal wiretap and he proves that the tap was in fact unlawful, the burden shifts to the prosecution to prove that the evidence in question was obtained from another source and is not tainted by the illegal surveillance.

Id. at 533-34.

sufficient evidence to make a prima facie showing that the search occurred before the warrant was obtained.

The more difficult question in this case is which party has the burden of persuasion. Typically, where the legality of a search is at issue, the defendant is either contesting the validity of a warrant or a warrant was never issued and the defendant contends that no warrant exception applies. In the former situation, the general rule applies that the defendant has the burden of persuasion. In the latter situation, which is the exception explained in De La Fuente, the government bears the burden of persuasion.

The case at bar, however, presents a peculiar situation. Unlike the two situations previously described, the issue in this case is whether Defendants' residence was searched before the agents obtained a warrant. Thus, the Court must determine who bears the burden of persuasion on this issue.

The fact issue in this case, whether a search occurred before a warrant was issued, is not one of the "well defined" exceptions outlined in De La Fuente where the burden of persuasion shifts to the government. If the Court were to hold that the government bears the burden of proof on this issue, it would be creating a new exception to the general rule announced De La Fuente. Since De La Fuente, the Fifth Circuit has not expanded the circumstances under which the burden of persuasion shifts to the government. The Court

therefore sees no reason why it should plow new ground and create a new exception to the general rule that the defendant bears the burden of persuasion on a motion to suppress. Accordingly, in keeping with the general rule, the Court finds that Defendants have the burden of persuasion on this issue. In other words, Defendants must prove by a preponderance of the evidence that the search occurred prior to the agents' obtaining a warrant.

### III. Analysis

In deciding whether the warrant was signed prior to the search, the Court must essentially determine at what time the search began and at what time the drugs were discovered. Agent Sandifer testified that the search began at approximately 5:00 p.m. and that the drugs were discovered at approximately 5:30. However, the photographs she and PO Roberts took, with two different cameras, tell a different story. The photographs taken by PO Roberts, of various items other than the drugs, include times ranging from 3:49 p.m. until 3:57 p.m. Agent Sandifer's photographs of the actual discovery of the drugs range from 4:04 to 4:09 p.m. Thus, it can reasonably be inferred from the photographs that the search began no later than approximately 3:49 p.m. and that the drugs were discovered at approximately 4:04 p.m.

The question then becomes whether the times imprinted on the photographs are accurate. Agent Sandifer and PO Roberts testified that they had never set the time on their camera; therefore, the

government argues that the times imprinted on the pictures are unreliable. The Court, however, disagrees. The fact that *both* sets of photographs taken with two *different* cameras reflect consistent times gives credibility to the accuracy of the time. The Court finds that the photographs are reliable and reflect the actual time of the search.

As an alternative argument, the government contends that even if the time on the cameras were originally accurate, they were never adjusted for daylight-saving time.[5] Because the cameras were not adjusted for daylight-saving time, the government reasons that the times imprinted on the photographs reflect a time one hour earlier than the original time. Thus, the government argues , the actual time of the search was one hour later than the time reflected on the photographs, which would be approximately 4:49 p.m. to 5:04 p.m. The government therefore concludes that this gives credibility to Agent Sandifer's testimony that the search started at approximate 5:00 p.m.

But even assuming that the cameras were not adjusted for daylight-saving time and were off by one hour, the photographs still contradict Agent Sandifer's testimony. The photographs taken by Agent Sandifer reflect that the drugs were discovered at approximately 4:04 p.m. Adding the additional hour for daylight-

---

[5] At the November 18 Hearing, the Court took judicial notice of the fact that the search occurred while day-light saving time was in effect.

saving time, the photographs indicate that the search began at 5:04 p.m. – twenty-six minutes earlier than the time agent Sandifer testified that the drugs were found. The government fails to account for this large time discrepancy.

Additionally, the credibility of the testimony given by the agents at the November 18 Hearing is questionable. Agent Sandifer was often unsure of exact times and on several occasions gave contradictory answers. Moreover, her investigative report and the photographs she took indicated different times than her testimony and affidavit. The testimony of Agent Walden and PO Roberts also failed to verify Agent Sandifer's story as both agents were unable to recollect any times that events occurred on the day of the search.

Accordingly, after weighing all the evidence presented by the parties, the Court finds that Defendants have met their burden of persuasion, and therefore their "burden of proof," that the search occurred before a warrant was issued. The Court must therefore suppress the evidence obtained during the search.

## IV.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that the Motion to Suppress of Defendants Jason Bonds and Twilla King is well taken and is hereby granted. All evidence seized in the search of 221 North Magnolia Street, McComb, Mississippi, conducted by the Mississippi Bureau of

10

Narcotics on June 8, 2004, is hereby suppressed and excluded from use at the trial or subsequent hearings in this action.

SO ORDERED this the 13th day of January, 2006.

<u>s/ William H. Barbour, Jr.</u>
UNITED STATES DISTRICT JUDGE

blj